IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TYLER JACK SNIDER, | Cause No. CV 22-72-BLG-SPW |
| Petitioner, | |
| vs. | ORDER |
| WARDEN JIM SALMONSEN,[1] THE MONTANA DEPARTMENT OF CORRECTIONS, BRIAN GOOTKIN, | |
| Respondent. | |

State petitioner Tyler Jack Snider ("Snider"), through counsel, filed an

application under 28 U.S.C. § 2254, seeking habeas corpus relief. (Doc. 1.) The

Respondents were directed to file an answer and timely complied. (Doc. 7.) After

several extensions, Snider filed his reply. (Doc. 21.) The matter is ripe for

adjudication.

## I.    Background

The Montana Supreme Court summarized the facts underlying Snider's

---

[1] While this matter has been pending, Snider was transferred from an out of state facility back to Montana State Prison. The Montana Department of Corrections and its Director, Brian Gootkin, were previously listed as lead Respondents. Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, a state prisoner seeking federal habeas relief must name as respondent the person having custody of him. *See Magwood v. Patterson*, 561 U.S. 320, 333 (2010). Accordingly, the caption reflects MSP Warden Jim Salmonsen as Snider's current custodian and primary respondent.

conviction as follows:

> On February 15, 2015, Fallon McCleary was hanging out with Robert Lacroix and Cassandra Hafferman at Snider's house before Snider returned home from work. McCleary was four months pregnant at the time with Snider's child. As Hafferman was trying to leave, Snider drove up and blocked her vehicle in. He began yelling at McCleary and Lacroix and accused them of taking his things. Snider has admitted that he was high on methamphetamine at the time. Hafferman got out of her vehicle and asked Snider and Lacroix to move their vehicles so she could leave. As she was returning to her vehicle, she heard a gunshot. When she turned around, she saw Snider holding a handgun. Lacroix had his hands in the air. When Hafferman approached Snider, he pointed the gun at her, but lowered it to the ground when she put her hands up.

> McCleary and Lacroix attempted to flee from Snider in Lacroix's vehicle. Snider pursued them and began shooting at them. Law enforcement officers later found McCleary walking along U.S. Highway 87 with a gunshot wound to her left ear. They learned that Lacroix also had suffered a gunshot wound to his arm. After obtaining a search warrant for Lacroix's vehicle, officers found a hole in the base of the window with blood on the driver's door armrest area. They also found a hole through the passenger headrest with blood on the seat at the base of the headrest. At the time of the shootings, Snider was serving a four-year suspended sentence for felony intimidation in DC 10-07 and was out of jail on bond in a proceeding to revoke that suspended sentence.

> Snider was taken into custody on February 17, 2015, two days after the shooting. In his briefing before both this Court and the District Court, Snider states that he contacted law enforcement through his counsel on February 17 to inform them he wanted to turn himself in for the shootings and that the sheriff responded to Snider's location and placed him under arrest as a suspect in the shooting. The record

shows that on February 17, the State filed a petition to revoke against Snider in DC 10-07 and that the District Court issued an arrest warrant for violation of bail conditions in that case. This warrant was served on Snider the morning of February 18 at the Musselshell County Sheriff's Office, where Snider was being held. On March 2, 2015, the court revoked Snider's suspended sentence in DC 10-07 and imposed a four-year commitment to the Department of Corrections. He was sent to the Montana State Prison ("MSP") on a placement override that found Snider was not appropriate for placement at the Missoula Assessment & Sanction Center ("MASC"), and he remained incarcerated at MSP throughout the proceedings in this case.

The State moved for leave to file an information and filed a supporting affidavit on May 14, 2015, for the offenses in this case. The following week, the court issued an order granting the State leave to file, as well as an arrest warrant. The State filed its information against Snider on May 22, charging Snider with three counts of attempted deliberate homicide, one count of assault with a weapon, and one count of commission of an offense with a dangerous weapon, a sentence enhancement.

In September 2015, the court issued its scheduling order for the new charges, scheduling a four-day trial to start on February 9, 2016. More than two months later, Snider filed a motion to dismiss the charges because his right to a speedy trial had been violated. His motion did not have any attachments. The State attached to its response a single one-page form from March 2015, granting an override request to send Snider to MSP rather than MASC. At a hearing on the motion, neither party presented any testimony or additional evidence. The District Court denied the motion. It determined that the length of the delay between accusation and the scheduled trial was 263 days, counting from the date the State filed the information. This length of delay triggered the four-factor balancing test. After balancing the factors, the District Court determined that the State had not violated Snider's

3

right to a speedy trial.

The State and Snider entered a plea agreement in which Snider would plead guilty to two amended counts of assault with a weapon and the State would dismiss the remaining charges. Snider reserved his right to appeal the denial of his motion to dismiss. Following a sentencing hearing, the District Court sentenced Snider to two concurrent forty-year prison sentences, with a twenty-year parole restriction.

*State v. Snider*, 2018 MT 258, ¶¶3-8, 393 Mont. 166, 429 P.3d 268.

**Procedural History**

Following his sentencing hearing, Snider filed a motion for disqualification of Hon. Randal Spaulding, asserting he wished to withdraw his guilty plea and was entitled to an unbiased judge. *See*, (Doc. 1-5); *see also*, (Doc. 1 at 6.)  The matter was referred to the Montana Supreme Court, which noted that the final written judgment had been entered on July 26, 2016, and that on August 31, 2016, Snider's trial counsel filed a notice that the Office of the Appellate Defender would be counsel of record for Snider.  (Doc. 1-6 at 1.)  The Clerk of Court for Musselshell County was contacted and reported that Snider had not actually filed a request to withdraw his guilty plea.  Additionally, the Court observed that no notice of appeal had yet been filed with the Clerk of the Supreme Court.  Accordingly, Snider's motion to disqualify Judge Spaulding from the criminal case was denied as moot. (*Id.*)

On September 26, 2016, appellate counsel filed a notice of appeal.  *See*,

(Doc. 1-9 at 4.) There Snider argued the district court: (1) erred in denying his motion to dismiss based upon the purported speedy trial violation, (2) erred in admitting a jailhouse informant letter into the record, and (3) impermissibly imposed multiple court information technology fees as part of Snider's sentence. The Montana Supreme Court affirmed on the first two issues and remanded the matter with the directive that the lower court strike one of the information technology fees. *Id.* at ¶ 2.

In relation to the speedy trial issue, the Court found the delay of 263 days, which was only 63 days beyond the 200-day trigger date, not to be particularly long. Moreover, the Court noted most of the delay was institutional rather than the fault of either party, Snider's responses to the delay did not indicate a strong desire for a speedy trial, the presumption of prejudice was relatively weak due to the rather short period of delay, and the delay did not create any meaningful additional anxiety for Snider or affect his ability to defend himself. *Id.* at ¶¶17-21. Notably, Snider did not present a claim on direct appeal that Judge Spaulding should have been recused from presiding over his case or that his attorney was ineffective for failing to seek Judge Spaulding's removal.

On January 22, 2020, Snider filed a pro se petition for postconviction relief ("PCR") alleging judicial bias, ineffective assistance of counsel ("IAC"), failure of the prosecutor to disclose material, mental health/sanity issues, and denial of

5

access to legal materials. *See generally*, (Doc. 7-25.) The State subsequently moved to dismiss the petition. In a reasoned decision, the district court denied relief on the merits. (Doc. 1-8.)[2]

Pertinent to the instant proceedings, Judge Spaulding addressed Snider's judicial bias and prejudice claim. Judge Spaulding noted that he was aware Snider had sought his substitution and/or disqualification in the Montana Supreme Court, to no avail. He also determined that in the PCR proceedings Snider failed to provide evidence supporting the claim. (Doc. 1-8 at 9.) Judge Spaulding reviewed Snider's August 22, 2016, motion and affidavit and responded to the allegations contained therein, noting his overall disagreement with Snider. First, Spaulding disagreed with Snider's characterization of the "personal" relationship the two shared. Instead, Spaulding noted that he had been appointed to represent Snider while in private practice, that he may have prosecuted him at some point in time, and he had sentenced him in the underlying criminal matter. Spaulding asserted that none of these interactions were of a personal nature. (*Id*. at 10.)

Spaulding explained that in a prior criminal matter of Snider's he had recused himself, as the alleged victim and Snider's then-partner, E.O., was the daughter of his friends. Although Spaulding noted he had no actual bias against

---

[2] Following the filing of the postconviction petition, Snider's mother filed a motion to recuse with the Montana Supreme Court. The matter was denied on procedural grounds, pursuant to Mont. Code Ann. §3-1-805. *See*, (Doc. 1-7.)

Snider, he wished to avoid the appearance of potential bias or prejudice and thought recusal appropriate under those circumstances. (*Id.*) To the extent that Snider alleged Spaulding relied upon the case involving E.O. in fashioning his later sentence, Spaulding explained that any reference to that matter was noted as part of Snider's overall criminal history and was an appropriate consideration for sentencing purposes. (*Id.* at 10-11.)

Snider alleged that E.O.'s father, attempted to convince her to adopt her baby to Judge Spaulding and his wife. Judge Spaulding confirmed that neither he nor his wife was ever consulted about potentially adopting the child and only learned of this allegation in Snider's affidavit. Similarly, Judge Spaulding had no knowledge of a comment allegedly made by his wife that Snider "deserved to get 40 years in prison." (*Id.* at 11.) Finally, in response to the fact that Judge Spaulding made a comment during sentencing that he had met Snider's newborn baby and "would like to take the child home and love it as his own," Spaulding acknowledged that while he should not have made the comment, he did not intend for it to be taken in the literal sense. (*Id.*)[3] In light of these considerations,

---

[3] The Court notes that this statement was made in the context of discussing the far-reaching effects of Snider's criminal acts, and that one of the individuals Snider shot, McCleary, was pregnant with Snider's child at the time of the offense. Spaulding first discussed meeting Snider's older son and then stated:

> And I held your new baby, the one that was—that Ms. McCleary was pregnant with at the time of this offense. Beautiful child. I'd take it home and raise it and love it as my own right now. And that's what I'm talking about with the carnage. It's like a ripple effect in

7

Spaulding found that Snider failed to properly support his judicial bias claim, and
that dismissal was appropriate.

In relation to Snider's IAC claims, the district court found that any record-
based claims that could have been raised on direct appeal, but were not, were now
barred from review. *Id.* at 8, citing Mont. Cod Ann. §46-21-105(2)-(3).
Specifically, to the extent that Snider tried to renew or reassert a speedy trial claim
as grounds for relief, the claim was barred. *Id.* at 8. The court found that Snider
wholly failed to support his claims with competent evidence and that Snider's own
self-serving affidavit was devoid of substantive facts demonstrating counsel's
performance was deficient, much less that he was prejudiced by the same. (*Id.*)
Specifically, as to Snider's allegation that counsel failed to file various motions,
including a motion to substitute or disqualify Spaulding, it was noted that Snider
did not provide any evidence that the motion had any basis in law or fact, and he
did not show how he was prejudiced by the failure to file such motions. Because
the IAC claims lacked factual or legal support, they were dismissed. (*Id.* at 8-9.)

Snider appealed. The Montana Supreme Court concurred with the district
court's finding that Snider failed to provide evidence, aside from a passing

---

the water. It's not just you. It's not just your immediate family. It's all of the extended
family, the rest of the community. We all pay in some form or fashion for the choices
that you've made.

(Doc. 7-15 at 77:15-24.)

reference to his motion and affidavit to disqualify, in support his claim of judicial bias or prejudice. While Judge Spaulding had prior professional interactions with Snider, the record did not support the allegations of bias or prejudice, and the PCR petition failed to make a prima facie showing. *Snider v. State*, 405 Mont. 535, ¶9, 2021 MT 169N, 489 P. 3d 906.

The Court was likewise not convinced by Snider's claim that the district court abused its discretion by failing to authorize discovery or conduct an evidentiary hearing on the IAC claims. Snider failed to identify what counsel should have done- i.e. what evidence he should have gathered, motions he should have filed, or information that could have been placed in the record- and how the failure to do so prejudiced Snider or affected his appeal. *Id.* at ¶11. The Court noted that while Snider's "appellate counsel [did] a good job of glossing over the glaring inadequacies of Snider's PCR petition" to make the argument that the district court should have permitted discovery or held an evidentiary hearing, his PCR petition failed to raise the requisite prima facie showing in support of postconviction relief. *Id.* at ¶13. The district court's decision was affirmed.

**Snider's Claims**

Snider advances two general claims in his petition. He claims his Sixth Amendment right to counsel, and a fair sentencing and PCR proceedings, were violated by the failure to consider the merits of his motions to recuse Judge

9

Spaulding.  He next claims that his substantive due process rights to have a prompt

arraignment were violated by a 97 delay in his initial appearance on the criminal

charges and that counsel erred by failing to make this argument on his behalf.  *See*,

(Doc. 1 at 8-9.)  Respondents contend Snider's petition is untimely, that his guilty

plea precludes review of both claims, and that his claims are unexhausted and lack

merit.  *See generally*, (Doc. 7.)

## II.    Analysis

For the reasons discussed herein, Snider's petition will be denied and

dismissed.

### Timeliness of Petition

As a preliminary matter, Respondents argue that Snider's federal petition is

untimely and that he is not entitled to tolling.  (Doc. 7 at 24-27.)  Specifically,

Respondents assert that the original district court judgment entered on July 26,

2016, not the Order amending sentence entered on April 24, 2020, should control

the statute of limitations.  (*Id.* at 27-31.)

It is true that the AEDPA mandates that a one-year statute of limitations

applies to applications for a writ of habeas corpus by a person in state custody.  28

U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall

run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;

10

(B) the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D); *Shannon v. Newland*, 410 F. 3d 1083 (9th Cir. 2005). Respondents advance that the amendment to Snider's judgment is akin to a correction of clerical error and further analogize the present situation to those cases in which an amended restitution order has been entered that does not restart the statute of limitations. (Doc. 7 at 29-30.) While the argument is compelling, this Court cannot overlook the decision of the state postconviction court applying finality for purposes of calculating the timeliness of a postconviction petition from the date of entry of the amended judgment. (Doc. 1-8 at 5.) That court explained:

> Here, the Montana Supreme Court issued its opinion regarding the Petitioner's appeal on October 23, 2018. Ordinarily, the Petitioner's conviction would have become final 90 days later, on January 21, 2019, when his time to appeal to the United States Supreme Court expired. The Petitioner would then have had one year therefrom, or until January 21, 2020, to file his petition for postconviction relief or be time barred. However, the Montana Supreme Court's order remanded the matter to this Court with instructions to strike one of the two court technology fees it had imposed in its sentence and judgment. Unfortunately, it does not appear that this Court entered an amended sentence and judgment striking the technology fee, likely

11

because the Clerk noted from the remittitur that this Court's decision was "affirmed" and did not therefore bring the matter to the Court's attention. Consequently, there is no date from which to calculate the one-year deadline for the Petitioner to file his petition for postconviction relief. However, it would, in the Court's opinion, be fundamentally unfair to declare Petitioner's petition untimely due to an oversight by this Court. Thus, this Court treats Petitioner's petition as timely.

(*Id*. at 5-6.) The lower court's reasoning is persuasive. Accordingly, Snider's §2254 petition will be treated as timely.

### Waiver of Judicial Bias Claims

Snider contends that his recusal motions were meritorious and the failure to consider them violated his rights. As set forth above, the postconviction court did address the merits of the claim, finding the claim lacked support and was subject to dismissal. The Montana Supreme Court adopted the lower court's rationale. But to the extent that Snider tries to reframe the claim as a Sixth Amendment and/or due process claim and obtain this Court's review, this pre-plea claim is inappropriate for review in federal habeas.

Snider makes no challenge to the nature of his guilty plea. At a hearing on February 4, 2016, Snider appeared before Judge Spaulding and discussed the Plea Agreement he was entering into, as well as his Acknowledgment of Rights form, and the parties' respective sentencing recommendations. *See e.g.*, Min. (Doc. 7-11 at 1). Snider was sworn and examined by Judge Spaulding regarding his guilty plea. (*Id*. at 2.) As part of this process, Snider recognized that he would be

12

sentenced as a persistent felony offender ("PFO") and that he reserved his right to appeal the denial of his pretrial motions. *See e.g.*, Plea Agreement (Doc. 7-9 at 3.)

Additionally, Snider acknowledged that he was aware of the amended charges to which he would be pleading guilty and noted that the maximum penalties had been explained to him by his attorney. (*Id.* at 4-5.) He further indicated he understood his constitutional rights, including: the right to persist in his not guilty plea, the right to a jury trial, the right have witnesses testify on his behalf, the right to confront and cross-examine witnesses against him, the right not to be compelled to incriminate himself, the right to require that his guilt be proven beyond a reasonable doubt, and the right to be found guilty of any lesser included offenses. (*Id.* at 5.) Further, Snider recognized that by entering his guilty pleas, he was waiving these rights. (*Id.*) Snider was aware that the State would be recommending a 40-year sentence to the Montana State Prison, (*id.* at 3), that the defense was able to argue for less time, (*id.*), and that the probation officer working for the Montana Department of Corrections could make a sentencing recommendation in its Pre-Sentence Investigation Report that differed from that made by the State. (*Id.* at 6.) Finally, Snider indicated he understood that the sentencing court was not bound by the terms of the Plea Agreement and that the ultimate sentence imposed was within the sole discretion of the sentencing judge. (*Id.*)

Thus, the record indicates that Snider was well aware of the constitutional rights he was giving up in exchange for the benefit he would receive from the plea agreement, specifically that he would be pleading guilty to two amended counts of Assault with a Weapon, rather that pursuing a trial on three counts of Attempted Deliberate Homicide and the associated offenses. (*Id.* at 1-3.) Moreover, Snider knew that Judge Spaulding would be presiding over his sentencing and expressed no reservations. Thus, the record before this Court demonstrates that the guilty pleas were entered knowingly, voluntarily, and intelligently.

Snider does not now argue that his pleas were entered under duress or upon faulty advice of counsel. During his sentencing hearing Snider admitted guilt and accepted full responsibility for committing the underlying offenses. *See e.g.*, Sent. Trans. (Doc. 7-15 at 67-70). Similarly, a review of the sentencing transcript gives no indication that Snider had an issue with Judge Spaulding, nor did he or counsel object to Judge Spaulding presiding over the matter. It was only when he received a sentence that he did not like, particularly a 20-year parole restriction, that Snider expressed dissatisfaction with Judge Spaulding. (*Id.* at 86-87.)

Some constitutional rights are automatically waived by entering an unconditional guilty plea. This non-exclusive list includes the right to a jury trial, the right to confront one's accusers, and the right to invoke the privilege against self-incrimination, *McCarthy v. United States*, 394 U.S. 459, 466 (1969), as well as

14

the right to challenge constitutional defects which occur before entry of the plea. *United States v. Broce*, 488 U.S. 563, 573-74 (1989). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also United States v. Caperell*, 938 F. 2d 975, 977(9th Cir. 1991) (a guilty plea generally waives all claims of a constitutional nature occurring before the plea.)

A guilty plea breaks the chain of events that proceeded it in the criminal process. *Tollett*, 411 U.S. at 267. "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilty and a lawful sentence." *Broce*, 488 U.S. 569. Accordingly, a defendant convicted after a plea of guilty is limited to challenging "whether the underling plea was both counseled and voluntary" or whether "on the face of the record the court had no power to enter the conviction or impose the sentence. *Broce*, 488 U.S. at 569.

Accordingly, the claim of purported judicial bias on the part of Judge Spaulding stemming from the relationship he had with Snider, of which Snider was well-aware in the years leading up to his change of plea hearing, is not proper in the present proceeding. Snider's attempts to reframe the claim cannot cure this

overarching deficiency. The Respondents' argument that this precise claim is unexhausted appears to also have merit, however, because the claim is not appropriate for review in federal habeas, it will be dismissed on that basis.

### Default of Arraignment Delay/IAC Claims

Snider next contends that the 97-day delay in his initial appearance before the district court was presumptively prejudicial and his attorney performed deficiently for failing to raise the issue. (Doc. 1 at 13.) Respondents contend that Snider is not entitled to relief on this claim because he failed to exhaust either portion of this claim in the state courts. (Doc. 7 at 51-54.) The Respondents' position is well-taken.

A state prisoner must exhaust his state court remedies before petitioning for a writ of habeas corpus in federal court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Federal courts may not grant a writ of habeas corpus brought by an individual in custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). "The exhaustion-of-state-remedies doctrine, now codified at 28 U.S.C. §§ 2254(b) and (c), reflects a policy of federal-state comity, an accommodation of our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citation omitted).

16

To meet the exhaustion requirement, a petitioner must (1) use the "remedies available," § 2254(b)(1)(A), through the state's established procedures for appellate review, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); (2) describe "the federal legal theory on which his claim is based," *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008); and (3) describe "the operative facts . . . necessary to give application to the constitutional principle upon which the petitioner relies." *Id; see also*, *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).  A petitioner must meet all three prongs of the test in one proceeding.  "Mere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion."  *Castillo v. McFadden*, 399 F. 3d 993, 999, cert. denied, 546 U.S. 818 (2005).

Snider argued before the district court that his Sixth Amendment right to a speedy trial was violated by the overall delay in his prosecution under the factors set out by *Barker v. Wingo*, 407 U.S. 514 (1972).  *See*, (Doc. 7-5 at 3-8.)  The district court denied the motion, applying the *Barker v. Wingo* balancing approach as adopted by the Montana Supreme Court in *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P. 3d 815.  *See*, (Doc. 7-8.)  As set forth above, Snider reserved his right to appeal the denial of the pretrial motion in his Plea Agreement.  On appeal, Snider renewed the same essential *Barker/Ariegwe* argument advanced in the lower court and was denied relief.  *State v. Snider*, 2018 MT 258.

17

In his federal petition, Snider has fundamentally altered the nature of the speedy trial claim he advances. He now asserts that the 97-day delay between the filing of the charges and his initial appearance violated his right to due process and that his attorney performed deficiently for failing to raise this precise challenge. Snider also provided a new and distinct legal theory supporting this claim and does not rely on a *Barker/Ariegwe* balancing approach. *See*, (Doc. 1 at 14-17.)

Accordingly, neither the factual basis nor the legal basis for the claim Snider now asserts was fairly presented to the state courts as part of his speedy trial claim. A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that were not presented in the highest state court. Such expanded claims are not properly considered in a federal habeas petition. *See, Pappageorge v. Sumner*, 688 F. 2d 1294 (9th Cir. 1982), *cert. denied*, 459 U.S. 1219 (1983). Similarly, failure to alert the state court to the constitutional nature of the claim will amount to a failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. 364, 366 (1995). Even if all the facts necessary to support a claim were before the state courts or a "somewhat similar" claim was made, the petitioner must make the federal basis of the claim clear to the state courts. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *see also*, *Insyxiengmay v. Morgan,* 403 F. 3d 657, 668 (9th Cir. 2005). Here, Snider has fundamentally altered the factual and legal claim previously considered by the state

18

courts, making the federal claim unexhausted. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). Similarly, Snider did not present or exhaust the IAC claim relative to counsel's failure to raise this altered speedy trial claim in the state courts.

Ordinarily unexhausted claims are dismissed without prejudice. But as pointed out by Respondents, Snider has no available state judicial remedies available to him. (Doc. 7 at 52-53.) His 60-day deadline for filing a direct appeal has long since expired, *see* Mont. R. App. P. 4(5)(b)(i), he is procedurally barred from presenting these claims in a postconviction proceeding as they could have been raised on direct appeal or in his original PCR petition, *see* Mont. Code Ann. §§ 46-21-105(2) and 46-21-105(1)(a), moreover, any PCR petition would now be time-barred. MCA §46-21-102(1). Accordingly, these claims are also procedurally defaulted.

In his reply, Snider does not suggest that these claims were properly exhausted and/or not defaulted, instead he argues that counsel should have been more precise in the language of the speedy trial argument and recognized the due process violations and the harm incurred by Snider as a result of the delay in arraignment. (Doc. 21 at 6-7.) Snider's position is not persuasive. Additionally, Snider has not shown that there is adequate cause and prejudice to set aside the procedural default, that he is actually innocent, or that a miscarriage of justice will occur if the claims are not considered. *See*, 28 U.S.C. § 2254(c)(2)(B); *Schlup v.*

*Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). The claims remain procedurally defaulted. Accordingly, Snider is barred from seeking federal habeas relief and the claims will be dismissed with prejudice.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Snider has not made a substantial showing that he was deprived of a constitutional right. His judicial bias claims are not properly before the Court and his altered speedy trial claims are procedurally defaulted without excuse.

Reasonable jurists would find no basis to encourage further proceedings.  A certificate of appealability will be denied.

Based on the foregoing, the Court enters the following:

## ORDER

1.  The Petition (Doc. 1) is DENIED and DISMISSED with prejudice.

2.  The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3.  A certificate of appealability is DENIED.

DATED this 26th day of September, 2025.

Susan P. Watters
United States District Court Judge